United States District Court
Southern District of New York

─────────────────────────────────

LITTLE REST TWELVE, INC., ET AL.,

                    Plaintiffs,        11 Civ. 2306 (JGK)
                                              11 Civ. 2307 (JGK)
        - against -            11 Civ. 2769 (JGK)

RAYMOND VISAN, ET AL.,           <u>OPINION AND ORDER</u>

                    Defendants.

─────────────────────────────────

LITTLE REST TWELVE, INC., ET AL.,

                    Plaintiffs,

        - against -

NINA ZAJIC, ET AL.,

                    Defendants.

─────────────────────────────────

MUTUAL BENEFITS OFFSHORE FUND,

                    Plaintiff,

        - against -

EMANUEL ZELTSER, ET AL.,

                    Defendants.

─────────────────────────────────

JOHN G. KOELTL, District Judge:

    This Opinion and Order concerns three cases featuring common counsel, related parties, and a convoluted procedural history. In each case, there is a dispute over the proper management of a plaintiff -- Little Rest Twelve, Inc. ("LRT") in

Little Rest Twelve, Inc. v. Raymond Visan, No. 11 Civ. 2306 ("Visan"), and Little Rest Twelve, Inc. v. Nina Zajic, 11 Civ. 2307 ("Zajic"); Mutual Offshore Benefit Fund ("MBOF") in Mutual Benefit Offshore Fund v. Emanuel Zeltser ("MBOF"), No. 11 Civ. 2769.  The cases are fraught with allegations of fraud and misconduct.  For ease of reference, this Opinion and Order will refer to the entities and persons represented by Mr. Katz and Mr. Zeltser as "old management," and those represented by Gusrae Kaplan Bruno & Nusbaum, PLLC ("GKBN") as "new management."[1]

All three cases come to this Court after being removed from the New York State Supreme Court, New York County, by counsel for the old management.  The old management claims that each case is related to proceedings in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") and that removal was proper pursuant to 28 U.S.C. §§ 1334 and 1452.  The old management also claims that Visan contains a trademark issue and is removable pursuant to 28 U.S.C. §§ 1441 and 1446.  The new management moves in Visan and MBOF for abstention under 28 U.S.C. §§ 1334 and 1452.  After the new management filed its motions to remand, three motions to intervene were filed.  A group of creditor intervenors (the "Creditor Intervenors") moved to intervene and opposed remand in

---

[1] No opinion as to the merits of the disputes over proper counsel or the ownership of any entity is intended by this convention.

<u>Visan</u> and <u>MBOF</u>, and a former employee of LRT, Hicham Azkour, moved to intervene and opposed remand in <u>Visan</u>.  The new management opposes intervention.


## I. Facts and Procedural History

The facts of this case are undisputed unless otherwise noted.


### A.  State Court Proceedings Prior to the Bankruptcy Petitions

#### 1.  <u>Little Rest Twelve</u>

LRT owns a New York City restaurant formerly known as "Buddha Bar" and now known as "Ajna Bar."  (<u>Zajic</u> Compl. ¶ 9; Zajic Decl. ¶ 3.)  LRT is the subject of a management dispute, the merits of which are not at issue on these motions.  On March 5, 2007, LRT and ImedInvest Partners ("ImedInvest") filed suit by Sternik & Zeltser ("S&Z"), counsel retained by the old management, against Raymond Visan and his wife, along with several business entities allegedly owned or controlled by the Visans (collectively, the "Visan Defendants") and Jean-Yves Haouzi.  (<u>Visan</u> Compl. ¶¶ 5-25.)[2]  The complaint alleges that Raymond Visan defrauded ImedInvest into investing in his enterprises in 2002.  (<u>Visan</u> Compl. ¶¶ 26-33.)  Then, once those

---

[2] Sometime after the initiation of the lawsuit, Visan passed away.  (June 17, 2011 Hr'g Tr. ("Tr.") at 3, 51.)

investments failed, the Complaint alleges, Visan convinced
ImedInvest to open the Buddha Bar, which Visan fraudulently
represented to be a "unique concept." (<u>Visan</u> Compl. ¶¶ 34-35,
41.) Visan allegedly "inserted" Haouzi as an officer of LRT,
the corporation formed to operate the restaurant venture in New
York City, and Visan and Haouzi began misusing Haouzi's
authority to the detriment of ImedInvest and LRT. (<u>Visan</u> Compl.
¶¶ 36-39, 43, 47-49.) The <u>Visan</u> complaint pleads causes of
action including fraud, breach of contract, conversion, tortious
interference with contractual relationship, and unjust
enrichment. (<u>Visan</u> Compl. ¶¶ 50-79.)

The only defendant who responded to the complaint was
Haouzi. Haouzi answered and filed counterclaims and third-party
claims against LRT; ImedInvest; Grosvenor Trading House Ltd.
("Grosvenor"), a shareholder in LRT; and several individuals
affiliated with the old management, including LRT officers Nina
Zajic and Joseph Kay (collectively, the "Haouzi Counterclaim
Defendants").[3] (Haouzi Ans. & Countercls. ¶¶ 4-8; Haouzi Third-
Party Compl. ¶¶ 2-8.) Haouzi alleged that the Haouzi
Counterclaim Defendants had "demanded that he execute fake
documents implicating [Visan]" in wrongdoing and both fired him

---

[3] In the parties' filings in state court and briefing in this Court, they used
the terms "counterclaims," "cross-claims," and "third-party claims"
interchangeably. The Court will, for simplicity's sake, follow Haouzi's
convention of referring to both counterclaim defendants and third-party
defendants together as "Counterclaim Defendants."

from his positions with LRT and sued him after he refused. (Haouzi Ans. & Countercls. ¶¶ 5-8.)  Haouzi brought state law causes of action for conversion, unjust enrichment, breach of contract, breach of fiduciary duty, prima facie tort, and an accounting.  (Haouzi Ans. & Countercls. ¶¶ 9-13; Haouzi Third-Party Compl. ¶¶ 19-37.)[4]  The Haouzi Counterclaim Defendants, in turn, brought third-party counterclaims against Haouzi for conversion and for various breaches of the New York Business Corporation Law ("NYBCL").  (Haouzi Counterclaim Defs.' Ans. & Counterclaim ¶¶ 30-58.)

     As far as the parties have disclosed, no further action took place in this case until June 22, 2009, two years later, when the old management moved for a default judgment against the Visan Defendants.  (Wickline Decl. ¶ 6.)  The Visan Defendants cross-moved to dismiss the complaint for failure to effect proper service or for failure to take proceedings for entry of judgment within one year after the alleged default.  (Wickline Decl. ¶ 7.)  New York State Supreme Court Justice Bernard Fried referred the service question to a special referee.  As of early 2010, the case remained at this stage.

     On or about March 31, 2010, a hotly contested management dispute boiled up at LRT.  The new management claims that the

---

[4] The copy of Haouzi's Answer and Counterclaims filed with the Notice of Removal and submitted to the Court is missing a page setting out two counterclaims.  From the party's arguments, it is clear that these counterclaims have no bearing on the issues before this Court.

shareholders legally removed the existing board of directors and officers, terminated LRT's relationship with S&Z, the attorneys retained by the old management, and appointed Haouzi as COO. (New Mgmt. Mem. of Law in Supp. of its Mot. for Remand in <u>Visan</u> ("New Mgmt. <u>Visan</u> Mem.") at 3.)

The old management, on the other hand, claims that Haouzi and three GKBN attorneys led an armed raid of LRT's premises "accompanied by approximately twenty to thirty men armed with handguns and batons." (Zajic Decl. ¶ 7.) The old management claims that Haouzi and the attorneys "threatened LRT's employees, drilled through a lock in [LRT's] safe and took possession of some $50,000 in cash contained therein," falsely represented that they had court orders and that the armed intruders were city marshals, and displayed their weapons threateningly. (Zajic Decl. ¶ 7-8.) The new management asserts that these claims are untrue. (Kruzhkov Decl. of Apr. 11, 2011 ("Kruzhkov <u>Visan</u> Decl.") ¶ 17.)

Whatever the truth of the matter, LRT filed the <u>Zajic</u> complaint in New York State Supreme Court around the same time, through GKBN, the attorneys retained by the new management. This complaint alleged that Zajic and other members of the old management engaged in "a course of misconduct whereby they have committed[,] among other things, corporate waste, embezzlement, self-dealing and corporate negligence." (<u>Zajic</u> Compl. ¶ 1.)

6

The complaint alleged causes of action for corporate waste, breach of fiduciary duty, negligence, conversion, unjust enrichment, prima facie tort, and various violations of the NYBCL.  (<u>Zajic</u> Compl. ¶¶ 25-31, 35-56.)

The old management filed "cross claims" against the GKBN attorneys on or about April 12, 2010, alleging that the GKBN attorneys' conduct during the "wild-west style raid" and pending litigation had violated New York Judiciary Law § 487, and involved the commission or aiding and abetting of fraud, assault, and battery.  (<u>Zajic</u> Cross-cls. ¶¶ 4, 52-71.)

Shortly after the events of March 31, the old management applied for injunctive relief before Justice Fried in <u>Visan</u>. After Justice Fried declined to issue a temporary restraining order, GKBN appeared on behalf of the new management and sought to withdraw the application for injunctive relief.  (Kruzhkov <u>Visan</u> Decl. ¶¶ 15, 17.)  Justice Fried determined that an evidentiary hearing was necessary to identify LRT's proper representative and he ordered expedited discovery and scheduled an evidentiary hearing for May 11, 2010.  (Kruzhkov <u>Visan</u> Decl. ¶ 18.)  After the first day of taking evidence, Justice Fried requested evidence on the ownership of LRT and set the continuation of the hearing for June 1, 2010.  (Kruzhkov <u>Visan</u> Decl. ¶ 19.)

On May 28, 2010, four days before the hearing was to continue, the old management moved to disqualify GKBN and to reargue the Court's decision to conduct a hearing on ownership. (Kruzhkov Visan Decl. ¶ 20.)  A month later, Justice Fried denied this motion and scheduled the evidentiary hearing to continue on September 13, 2010.  (Kruzhkov Visan Decl. ¶ 21.) After three more days of hearing, Justice Fried set a scheduling conference for October 14, 2010.  (Kruzhkov Visan Decl. ¶ 22.) The day before that conference was to occur, the old management filed an emergency application with the Appellate Division seeking relief from Justice Fried's denial of the temporary restraining order and his decision to conduct a hearing on the issue of counsel, as well as a stay of the evidentiary hearing. (Kruzhkov Visan Decl. ¶ 23.)  The Appellate Division denied the motion for a stay and eventually denied the remainder of the motion.  (Kruzhkov Visan Decl. ¶ 23, Ex. R.)  After additional delays due to a missing expert report and the unavailability of a member of the old management for testimony, the hearing concluded on December 16, 2010.  (Kruzhkov Visan Decl. ¶¶ 24-26.)  The hearing had included eleven days of testimony from ten witnesses and the introduction of 140 exhibits.  (Kruzhkov Visan Decl. ¶ 26.)  Both parties then submitted proposed findings of fact and conclusions of law, with supplemental findings due March 21, 2011.  (Kruzhkov Visan Decl. ¶¶ 26-27.)

## 2.  <u>Mutual Benefits Offshore Fund</u>

Mutual Benefits Offshore Fund was formed to invest in the death benefits of life insurance policies that it purchased from Mutual Benefits Corporation ("MBC"), a corporation that was placed into receivership in 2004 in the wake of widespread fraud.  (<u>MBOF</u> Compl. ¶¶ 2, 14, 16-17; Zeltser Countercls. ¶¶ 3-9.)  An investment company named Kayley Investments ("Kayley"), which was associated with Joseph Kay (a member of the old management of LRT), invested $15 million in MBOF.  (<u>MBOF</u> Compl. ¶¶ 15, 19; Zeltser Countercls. ¶¶ p, 12-13.)  MBOF retained Emanuel Zeltser of S&Z to seek recovery from the MBC receiver. (<u>MBOF</u> Compl. ¶¶ 19-21; Zeltser Countercls. ¶ 45.)[5]

Zeltser was able to recover some amount from the receiver. (<u>MBOF</u> Compl. ¶ 25; Zeltser Ans. ¶ 25.)  Thereafter, accounts diverge: MBOF, represented by GKBN, claims that Zeltser and associates embezzled these funds and otherwise acted improperly; those on the side of Zeltser and Joseph Kay argue that MBOF wrongfully ousted Zeltser and has acted to Kayley's detriment. On July 21, 2009, MBOF sued Zeltser, Joseph Kay, S&Z, and others in New York State Supreme Court, New York County, for fraud, conversion, breach of contract, breach of fiduciary duty, and unjust enrichment; S&Z, acting as trustee for Kayley, and Joseph

---

[5] Zeltser represented LRT prior to the new management's takeover of LRT on March 30, 2010 and was counsel of record when LRT filed the complaint in <u>Visan</u>.  (New Mgmt. <u>Visan</u> Mem. at 3; <u>Visan</u> Compl. at 14.)  He has appeared on behalf of both LRT and MBOF before the Bankruptcy Court.

Kay counterclaimed for, among other claims, fraud, conversion, and unjust enrichment.  (<u>MBOF</u> Compl. ¶¶ 47-86; Zeltser Countercls. ¶¶ 49-64.)

Justice Fried heard this case as well.  On November 1, 2010, he dismissed all counterclaims on the grounds that Kayley was not a party to the complaint and had not intervened, and that Joseph Kay failed to state a claim.  (Kruzhkov Decl. of May 13, 2011 ("Kruzhkov <u>MBOF</u> Decl.") Ex. G at 3.)  Discovery has been proceeding on MBOF's claims for over a year.  According to MBOF, discovery is nearly complete, but for the depositions of Zeltser and another S&Z defendant, which MBOF claims have been adjourned or otherwise delayed by the defendants several times. (Kruzhkov <u>MBOF</u> Decl. ¶¶ 18-28.)

## B.  The Bankruptcy Petitions

On March 17, 2011, a group of creditors, including the Creditor Intervenors here, filed petitions for involuntary bankruptcy in the Bankruptcy Court against LRT, MBOF, and a third company, Fischer Island Investments ("FII").  <u>In re Little Rest Twelve, Inc.</u>, No. 11-17061-AJC ("<u>In re LRT</u>"); <u>In re Mutual Benefits Offshore Fund, Ltd.</u>, No. 11-17051-AJC ("<u>In re MBOF</u>"); <u>In re Fischer Island Investments, Inc.</u>, No. 11-17047-AJC ("<u>In re FII</u>").  The creditors also filed ex parte motions to administer jointly the three bankruptcies.  <u>E.g.</u>, <u>In re LRT</u>, No. 11-17061-

AJC, Doc. No. 3 (Mar. 21, 2011).  On March 21, old management answered on behalf of all three companies, admitting the allegations in the Petition and consenting to the bankruptcies. E.g., id., Doc. No. 5 (Mar. 21, 2011).

The following day, new management appeared through counsel to oppose the petitions and moved to strike the old management's answers.  E.g., id., Doc. No. 8 (Mar. 22, 2011).  Three days later, Bankruptcy Judge A. Jay Cristol heard the motions. After questioning whether "something smell[ed] about a case being filed and instantly consented to . . . immediately followed by someone saying [the consenting counsel] didn't have the authority to do it in the first place," Judge Cristol granted relief from any automatic stay in all pending cases and granted the petitions to administer jointly the three bankruptcies for the limited purposes of determining the validity of the creditors' promissory note and the legitimate representatives and attorneys of the three companies.  (Kruzhkov Visan Decl. Ex. T at 6, Ex. U at 5.)  Judge Cristol made it clear that, "for the time being, we're not going to interfere with any existing litigation that's out there in any court in any jurisdiction by virtue of the fact that an involuntary has been filed in this case."  (Kruzhkov Visan Decl. Ex. T. at 64.) Judge Cristol noted again the "smell" surrounding the involuntary petitions and suggested that the creditors'

11

promissory note was "a rather unusual promissory note" and might be "an extension of Alice in Wonderland." (Kruzhkov Visan Decl. Ex. U at 2, 4-5.)  The promissory note is in the amount of $28.5 million and the makers of the note included Zajic as Chief Executive Officer of LRT, Joseph and David Kay as officers of FII, and a purported principal of MBOF. (Kruzhkov Visan Decl. Ex. U at 3; Zeltser Decl. Ex. 5 at 30-35.)

### C.  State Court Proceedings After the Bankruptcy Petitions

#### 1.  Little Rest Twelve Cases

Justice Fried held a conference in Visan on March 28, 2011, three days after Judge Cristol granted stay relief.  Justice Fried set summations on the representation issue for April 5, 2011 and stated: "I have spent some time on this and am looking forward to the summations with great anticipation and when I am finished, I expect to render a decision which will resolve what I consider to be disputed issues." (Kruzhkov Visan Decl. Ex. V at 12.)

Justice Fried did not have the chance to render that decision.  On April 4, the day before summations were scheduled to take place, the old management, acting on behalf of LRT and ImedInvest, filed a notice of removal in both Visan and Zajic. In both cases, it asserted that jurisdiction was proper under 28 U.S.C. § 1334 and removal proper under 28 U.S.C. § 1452 because

the claims and third-party claims or counterclaims "raise disputed claims of ownership and control of debtor LRT and, therefore[,] claims arising under Title 11." Visan, 11 Civ. 2306, Doc. No. 1 at ¶ 10 (Apr. 4, 2011); Zajic, 11 Civ. 2307, Doc. No. 1 at ¶ 10. (Apr. 4, 2011). In Visan, the old management also claimed jurisdiction under 28 U.S.C. § 1334 because the action "relates to rights in and to a federally-registered trademark and associated trade dress." Visan, 11 Civ. 2306, Doc. No. 1 at ¶ 9. Aside from the proffered trademark ground in Visan, the two notices are substantially identical.

The parties appeared before Justice Fried on April 5, at which point he stated that, if the case were remanded, he "want[ed] to be notified of that remand immediately" and would then "tak[e] the motion under submission, and . . . issue a decision without any further appearances in Court." (Kruzhkov Visan Decl. Ex. W at 2.)


B.  Mutual Benefits Offshore Fund

Nothing of note occurred in MBOF between the filing of the involuntary petitions and the removal of MBOF to this Court. On April 22, 2011, the old management, acting on behalf of the defendants, filed a notice of removal in MBOF. This notice was substantially identical to Visan and Zajic, and asserted only

13

bankruptcy jurisdiction as a ground for removal.  MBOF, 11 Civ. 2379, Doc. No. 1 at ¶¶ 9-10 (Apr. 22, 2011).

## II. Issues Raised in the Parties' Motions

After the notices of removal were filed, Visan was assigned to this Court; Zajic and MBOF were then assigned to this Court because of their relation to Visan.

The new management timely filed motions to remand in Visan and MBOF.  It argues in each case that mandatory and permissive abstention are appropriate under 28 U.S.C. § 1334(c) and that equitable remand is also appropriate under 28 U.S.C. § 1452.  It also argues that there are no issues of trademark law in Visan. Additionally, it seeks costs and expenses under 28 U.S.C. § 1447(c).  The new management did not move to remand in Zajic.

The old management opposes remand.  It argues that mandatory abstention is inappropriate because (a) the new management did not caption its motion to remand a motion to abstain; (b) independent grounds for federal jurisdiction exist, in that Visan involves a claim related to trademark law and the parties in MBOF are completely diverse; (c) Visan and MBOF involve core proceedings because both involve disputes over the ownership of entities in bankruptcy; and (d) the cases cannot be timely adjudicated in state court.  It opposes permissive

14

abstention and equitable remand on the ground that the cases could be more efficiently administered in the Bankruptcy Court.

The Creditor Intervenors moved to intervene in both <u>Visan</u> and <u>MBOF</u> and filed briefs opposing remand. The Creditor Intervenors claim an interest in the property at issue in these suits by reason of a confession of judgment signed by Kay and Zajic and request that the Court reduce that confession of judgment to a judgment in these suits.

Additionally, Hicham Azkour, a former employee of LRT, moved to intervene <u>pro se</u> in <u>Visan</u>. He too opposes remand. He claims an interest by alleging various causes of action sounding in discrimination, labor law, and civil RICO against both the old and new management, as well as against three GKBN lawyers. Some of these claims are the subject of a counseled suit brought by Mr. Azkour that is pending before another judge of this Court. <u>Azkour v. Little Rest Twelve, Inc.</u>, 10 Civ. 4132 (S.D.N.Y. filed May 19, 2010).

Finally, Grosvenor, a third-party defendant in <u>Visan</u>, opposed the motion to remand in <u>Visan</u>, in a filing by Zeltser.

### III. Motions to Remand

The parties agree that this Court has jurisdiction over these cases under 28 U.S.C. § 1334(b), which grants original but not exclusive jurisdiction to district courts in "proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The parties disagree as to whether remand is appropriate as a matter of mandatory abstention under § 1334(c)(2), permissive abstention under § 1334(c)(1), or equitable remand under § 1452(b).

### A.  Mandatory Abstention

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

This provision requires a district court to abstain from hearing a case if

> (1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is "related to" a bankruptcy proceeding, but does not arise under title 11 or arise in a title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) 'an action is commenced' in state court; and (6) the action can be 'timely adjudicated' in state court.

Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc., 337 B.R. 22, 26 (S.D.N.Y. 2005).

16

There is no dispute that the second and fifth prongs of this test are satisfied.  The old management disputes the other four.

### 1.  Abstention Motions Were Timely Brought

The first prong can be quickly dispensed with.  The old management does not dispute that the new management's motions were filed within the thirty-day window provided by 28 U.S.C. § 1447(c); rather, it argues that the new management failed to bring a timely motion to abstain because the motions are captioned motions to remand, rather than motions to abstain. The Court of Appeals for the Second Circuit recently rejected an identical argument where a party "filed a motion titled 'Plaintiff's Motion for Remand to State Court' and explicitly argued that the court should abstain pursuant to § 1334(c)(2)." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 580 (2d Cir. 2011).  This is exactly the course taken by the new management.  Therefore, the requirement of a timely motion is satisfied in Visan and MBOF.

In Zajic, however, the new management did not file any motion.  Therefore, mandatory abstention is unavailable in that case.

2.  *Visan* and *MBOF* Do Not Involve Core Proceedings

The old management next argues that these cases are "core proceedings" that "arise under Title 11" and that mandatory abstention is therefore inapplicable.  The Bankruptcy Code defines core proceedings to include, as relevant to this case, "matters concerning the administration of the estate."  28 U.S.C. § 157(b)(2)(A).  "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function."  In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) (internal citation omitted).  The concept of a "core proceeding" is interpreted broadly.  Id. at 636-37.  However, an action involving a debtor and a non-creditor in which "the only relationship . . . to the bankruptcy proceeding [is] that determination of the action would affect the ultimate size of the estate" is not a core proceeding.  In re Best Prods. Co., 68 F.3d 26, 32 (2d Cir. 1995); see also In re Orion Pictures Corp., 4 F.3d 1095, 1102 (2d Cir. 1993).

The old management argues that these cases are core proceedings because they "seek determination of the ownership and control of a debtor-in-possession."  (Old Mgmt. Mem. of Law in Opp'n to Mot. to Remand in Visan ("Old Mgmt. Visan Mem.") at 15; Old Mgmt. Mem. of Law in Opp'n to Mot. to Remand in MBOF

("Old Mgmt. MBOF Mem.") at 17.)   See In re SCK Corp., 54 B.R. 165, 169 (Bankr. D.N.J. 1984).   In Visan, the old management claims that this determination is sought in LRT's and Haouzi's claims for conversion of their respective purported ownership interests.   (Old Mgmt. Visan Mem. at 16-17.)  In MBOF, the old management claims that this determination is sought because two different parties claim ownership of MBOF.   (Old Mgmt. MBOF Mem. at 17.)[6]

None of the claims identified by the old management involve core bankruptcy matters.   The Visan complaint was filed about four years before the LRT bankruptcy and seeks to recover multi-million dollar damages that the defendants allegedly caused to LRT and ImedInvest through fraud, conversion, and other misconduct.   (Visan Compl. ¶ 1.)   The recovery sought is on behalf of LRT and ImedInvest.   None of the claims seeks a determination of the ownership of LRT.

LRT's complaint in Visan contains a cause of action for conversion that alleges that the defendants "converted Plaintiffs' funds and further converted Plaintiffs' share in the business" and that the defendants "without authority assumed and

---

[6] At oral argument on these motions, the old management expressly and repeatedly disclaimed any argument that jurisdiction is based on the representation dispute before Justice Fried or the subsidiary dispute over ownership.  (Tr. at 33, 34, 36, 38.)  The new management agreed that any finding as to ownership made by Justice Fried in the course of deciding the proper representation of LRT or MBOF would not be binding on Judge Cristol. (Tr. at 55.)

exercised, and still continue to exercise[,] the right of ownership over monies and property belonging to the Plaintiffs to the exclusion of the Plaintiffs." (Visan Compl. ¶¶ 63-64.) This claim is insufficient to render Visan a core proceeding for a number of reasons.  First, this claim seeks only the recovery of monetary damages for LRT and ImedInvest; the Visan plaintiffs did not seek a declaratory judgment to determine the ownership of LRT.  LRT is one of the Visan plaintiffs and a beneficiary of any judgment.  Indeed, the only specific injunctive relief requested is the imposition of a constructive trust. (Visan Compl. ¶¶ 75-79 & p. 14.)  The "constructive trust" is to recapture for LRT and ImedInvest the benefits that the defendants allegedly obtained by misusing funds that rightfully belonged to LRT and ImedInvest, and seeks to impose a constructive trust on the assets of various defendants.  Thus LRT's suit can have no effect on the actual control of LRT.  By contrast, the case on which the old management principally relies contained a declaratory judgment claim for ownership of a debtor.  SCK, 54 B.R. at 166-67; see also In re Louis J. Pearlman Enters., Inc., 398 B.R. 59, 62-63 (Bankr. M.D. Fla. 2008) (same).[7]  Indeed, the court in that case remanded all

_____

[7] The other cases that the old management cites in this section of their brief are also inapposite.  In re Chapman, 269 B.R. 201 (Bankr. N.D. Ill. 2001), aff'd, Nos. 01 C 9697, 00 A 0358, 00 B 5538, 2002 WL 818300 (N.D. Ill. Apr. 30, 2002), was a turnover action seeking to set aside an allegedly preferential transfer.  See id. at 205; see also 28 U.S.C. § 157(b)(2)(F)

claims among the putative owners seeking damages.  <u>SCK</u>, 54 B.R. at 169.

Nor are Haouzi's conversion claims "core" for the purposes of the Bankruptcy Code.  Like LRT, Haouzi did not seek a declaratory judgment as to ownership of LRT, instead requesting monetary damages against the Haouzi Counterclaim Defendants because of their alleged conversion.  (Haouzi Ans. & Countercls. ¶ 12; Haouzi Third-Party Compl. ¶ 30.)  Additionally, although Haouzi's claims note Haouzi's alleged fifteen percent ownership interest in LRT and assert that the Haouzi Counterclaim Defendants "interfered with Haouzi's right of possession of his interest in LRT" (Haouzi Ans. & Countercls. ¶¶ 10-11; Haouzi Third-Party Compl. ¶¶ 28-29), the facts alleged by Haouzi do not suggest that he has lost his alleged share of ownership of LRT, and do not identify any actions taken by the Haouzi Counterclaim Defendants that denied him any rights afforded by his purported status as a minority owner of LRT.  Accordingly, the claims in <u>Visan</u> do not concern any core bankruptcy matters.

<u>MBOF</u> also lacks any core proceeding.  MBOF's complaint deals solely with its lawyers' (or former lawyers') handling of funds recovered from the MBC receiver.  Indeed, the old

---

(providing that "proceedings to determine, avoid, or recover preferences" are core proceedings).  In <u>Bank of America, NT & SA v. Nickele</u>, No. Civ. A. 98-1501, 1998 WL 181827 (E.D. Pa. 1998), a lender filed a takeover action seeking to obtain control over a debtor.  <u>See</u> <u>id.</u> at *4.  Neither of these cases has any relevance to the facts of <u>Visan</u> or <u>MBOF</u>.

management does not attempt to argue that MBOF's claims contain any core matters.  Instead, the old management asserts that two of the third-party defendants that it brought into the suit "claim ownership in MBOF." (Old Mgmt. MBOF Mem. at 17.) However, none of the counterclaims or third-party claims describes or even arguably implicates this supposed ownership dispute -- and, in any event, all counterclaims and third-party claims were dismissed well before the case was removed.  There is therefore no plausible argument that the claims in MBOF in any way concern a core proceeding.

The old management also suggests in its brief that the cases are core because they "require interpretation of a bankruptcy court's order." (Old Mgmt. Visan Mem. at 18-19; Old Mgmt. MBOF Mem. at 19-20.)  However, the old management identifies no such orders presently in existence, and appears to be relying only on hypothetical future orders that the Bankruptcy Court will likely issue at some point in the future. The old management identifies no cases that suggest that a proceeding can be core solely because a bankruptcy court may one day issue a relevant order.

Accordingly, both Visan and MBOF are not core proceedings, and the third requirement for mandatory abstention is satisfied.[8]

---

[8] The Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594, 2011 WL 2472792 (2011), does not affect this conclusion.  Stern dealt with a counterclaim by a bankruptcy estate against a person filing a claim against

3.  <u>Section 1334 Is the Sole Basis for Federal Jurisdiction</u>

The old management next argues that both <u>Visan</u> and <u>MBOF</u> contain grounds for federal jurisdiction other than their relation to the Florida bankruptcies: in <u>Visan</u>, a question of trademark law, <u>see</u> 28 U.S.C. §§ 1331, 1338; in <u>MBOF</u>, complete diversity of parties, <u>see</u> 28 U.S.C. § 1332.  Thus, the old management argues, the notices of removal were independently permissible under 28 U.S.C. § 1441.  This argument, too, plainly fails, because no claims in either case "could . . . have been commenced in a court of the United States absent jurisdiction under [§ 1334]."  28 U.S.C. § 1334(c)(2).

First, as to <u>Visan</u>, it is plain that the plaintiffs asserted only state law claims and did not even attempt to assert a claim arising under federal law.  <u>See</u> 28 U.S.C. § 1331. The old management argues, however, that the state law claims "necessarily depend[] on resolution of a substantial question of federal law."  <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 690 (2006) (internal quotation marks omitted). The old management argues that its claims for fraud, breach of contract, and unjust enrichment turn in part on whether the

---

the estate, a category of claim explicitly identified by statute as core. <u>Id.</u> at *9; <u>see also</u> 28 U.S.C. § 157(b)(2)(C).  The Court went on to hold that "the entry of a final, binding judgment <u>by a court</u> with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime" is a power reserved in the federal system to Article III courts.  <u>Stern</u>, 2011 WL 2472792, at *21.

"Buddha Bar" was, in fact, a "unique concept" under trademark law. (Old Mgmt. <u>Visan</u> Mem. at 21.)

This argument is without merit. The <u>Visan</u> complaint never asserts that the fraud or conversion depended on registration or protection under federal law, or that there were any misrepresentations with respect to those issues. Rather, the gist of the actual allegations in the complaint relating to this issue is that:

> Unknown to the Plaintiffs but in true [sic] and in fact, Visan knew or should have known that his "unique concept" is far from "unique"; that his "marketing techniques" could never work in New York restaurant scene [sic]; that affiliation with Visan would hurt the image of any new establishment because of his shady fraudulent dealings, a string of insolvencies of related entities, [sic] controlled by the Visans and criminal investigations concerning his business operations.

(<u>Visan</u> Compl. ¶ 41.)  These allegations are light years away from a Lanham Act claim or any claim an element of which is the construction of federal trademark law. The old management's musings as to how it might inject federal trademark law into this case do not bring its claims within the "special and small category" into which the old management seeks to place them. <u>Empire Healthchoice Assurance</u>, 547 U.S. at 699.

Although federal jurisdiction over a state law cause of action may be proper where federal law is a "necessary element" of a claim for relief and where that element presents "a nearly

pure issue of law, one that could be settled once and for all and thereafter would govern numerous [federal] cases," it does not extend to "fact-bound and situation-specific" applications of federal law.  Id. at 699-701 (internal quotation marks omitted).  As the Supreme Court stated in the very case on which the old management relies, "it takes more than a federal element to open the 'arising under' door."  Id. at 701 (internal quotation marks omitted).  In this case, federal law is not a necessary element of any claim; any conceivable relevance of federal trademark law is fact-bound and minor in the context of an alleged fraudulent scheme that spanned several years and mostly involved activity that has no purported relationship to federal law whatsoever.  There is no independent federal law element that would support removal.

Second, as to MBOF, the basis for diversity jurisdiction is not, as the old management claims, apparent from the face of the complaint, because the citizenship of the plaintiff is not identified.  Even if its belated appeal to diversity jurisdiction could be considered, therefore, the old management has failed to carry its burden of establishing that removal is proper on this basis.  See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).

As to both Visan and MBOF, removal cannot be sustained under 28 U.S.C. § 1441.  In their briefs, the old management

25

cites section 1441, the general removal statute, which was not cited in their notices of removal.  Had they actually sought to remove the cases on these grounds, their notices would have been woefully inadequate.  First, as to both petitions, the notice of removal was untimely filed.  A notice of removal must be filed within 30 days of the receipt of the initial pleading or, if the initial complaint was not removable, any pleading or other paper that makes the case removable.  28 U.S.C. § 1446(b).  The Visan complaint, which contains the supposed trademark claims, was filed on March 5, 2007, while the MBOF complaint, from which the old management claims diversity jurisdiction is apparent, was filed on July 21, 2009.  Thus, the notice of removal in Visan was filed more than four years late and the notice in MBOF more than 21 months late.  Moreover, a case cannot be removed on the basis of diversity jurisdiction more than one year after commencement of the action.  28 U.S.C. § 1446(b).  Therefore, removal of MBOF could not have been based on diversity jurisdiction because such removal was more than nine months late under this provision.

As to Visan in particular, the old management sought removal on the basis of its own claims.  However, 28 U.S.C. §§ 1441 and 1446 refer only to removal by defendants, and "once a plaintiff files its case in state court, only a defendant may remove the action to district court" under those statutes.

Deutsche Bank Nat'l Trust Co. v. Doe, No. 10 Civ. 1490, 2010 WL
4683923, at *2 (D. Conn. Nov. 4, 2010) (collecting cases).

Finally, as to MBOF, the old management did not claim
diversity jurisdiction in its notice of removal.  A notice of
removal may not be sustained on a ground of jurisdiction not
stated in that notice.  See Arancio v. Prudential Ins. Co. of
Am., 247 F. Supp. 2d 333, 337 (S.D.N.Y. 2002) (granting a motion
to remand where the "removal petition was irremediably defective
as to federal question jurisdiction and silent as to
diversity"); Hinojosa v. Perez, 214 F. Supp. 2d 703, 707 (S.D.
Tex. 2002) ("It would be a substantial injustice to allow
Defendants to remove a case on one ground and then, when faced
with a serious challenge to that ground, attempt to justify
removal on an entirely different, and untimely, ground.").

Accordingly, no other grounds for federal jurisdiction
exist, and the fourth requirement for mandatory abstention is
satisfied.

### 4.  The Cases Can Be Timely Adjudicated in State Court

Finally, the old management argues that Visan and MBOF
cannot be timely adjudicated in state court.  When evaluating
timely adjudication under § 1334(c)(2), a court considers

> "(1) the backlog of the state court's calendar
> relative to the federal court's calendar; (2) the
> complexity of the issues presented and the

27

> respective expertise of each forum; (3) the
> status of the title 11 bankruptcy proceeding to
> which the state law claims are related; and (4)
> whether the state court proceeding would prolong
> the administration or liquidation of the estate."

Parmalat, 639 F.3d at 580.

While the parties have not presented any general statistics as to the backlog of the respective state and federal court calendars, it is evident that the cases are far along in state court, and Justice Fried was about to decide important issues when Visan was removed.  Given Justice Fried's expertise, the cases would be litigated in a very timely manner in state court. As to the complexity of the issues and the relevant expertise of each forum, all claims are wholly based on New York state law, with which the state courts have great expertise.  Moreover, the considerable work that Justice Fried has expended on each case provides a wealth of experience and understanding of the cases that would have to be duplicated if the cases were not remanded. That would be a waste of judicial resources.  Third, the bankruptcy proceedings are just beginning, and there is no plausible reason suggested why the likely pace of the state courts would be too slow for the bankruptcy proceedings to move forward.  Indeed, Judge Cristol, who is best positioned to know the needs of the Bankruptcy Court, expressly permitted the state court actions to proceed.  Fourth, there is no reason to think that the state court actions would prolong the administration or

28

liquidation of the estate, particularly given that, as the old management acknowledges, any issue of ownership decided by Justice Fried is not binding on Judge Cristol.  Judge Cristol was prepared to await the progress of the state court cases.  Thus the factors to be considered in the timely adjudication test weigh in favor of remand.

The old management points to the significant amount of time that has already transpired in state court since the filing of the complaints in each case.  However, much of this time is clearly due to the old management's action or inaction.  In both cases, the old management waited a significant amount of time before moving for default judgments.  The old management does not refute the new management's claims that the old management was responsible for the long delays in the evidentiary hearing in <u>Visan</u> or has repeatedly postponed or simply skipped depositions in <u>MBOF</u>.  Additionally, all of Justice Fried's scheduling decisions putting the resolution of the representation issues before more substantive matters seem eminently reasonable in light of the profound effect that representation will have on the course of the cases.

Accordingly, the sixth and final requirement for mandatory abstention is satisfied, and <u>Visan</u> and <u>MBOF</u> must be remanded to state court.

## B.   Permissive Abstention and Equitable Remand

For similar reasons, permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are both appropriate in MBOF and Visan.  A court generally may abstain pursuant to § 1334(c)(1) from hearing a particular proceeding within bankruptcy jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law," or may remand pursuant to § 1452(b) such claim or cause of action "on any equitable ground."  The two inquiries are essentially the same and are often analyzed together.  See, e.g., CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC, 396 B.R. 602, 607 (S.D.N.Y. 2008). The factors considered include

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

Id. (internal quotation marks omitted).  Courts have examined additional factors when considering permissive abstention, including, as relevant to these cases, "the presence of a related proceeding commenced in state court or other non-bankruptcy court" and "the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by

one of the parties." In re NTL, Inc., 295 B.R. 706, 717-18
(Bankr. S.D.N.Y. 2003).  Permissive abstention and equitable
remand should be used sparingly.  CCM Pathfinder, 396 B.R. at
607.

　　　　These factors also point toward the propriety of abstention
and remand.  (1) As already discussed, remand would not delay
and may even accelerate the administration of the bankruptcy
estate.  (2) The cases contain exclusively state claims with
little, if any, relevance to federal law.  (4) Comity as a
general matter counsels leaving matters of state law to state
courts; in this particular case, it also argues strongly in
favor of allowing Justice Fried to finish the matters that he
has begun, particularly considering his indication that he
anticipated concluding the representation matter if the Visan
case were remanded.  (Kruzhkov Visan Decl. Ex. V at 12.)  (5)
The proceedings here involve no core matters and are remote from
the main bankruptcy cases, which deal in the main with the
debtors' alleged debts.  The bankruptcy judge has specifically
allowed these cases to proceed in state court.  (6) The parties
have a right to a jury trial in both cases.  (7) The
involuntarily removed parties would be severely prejudiced by
being forced to relitigate matters that were addressed in state
court.  Finally, the removal petitions produce an unmistakable
impression of forum-shopping on the part of the old management,

which appeared to remove the cases to avoid the state court forum that it had originally chosen shortly before the state court judge was about to issue a decision in the <u>Visan</u> case.

Accordingly, both permissive abstention and equitable remand are appropriate in <u>Visan</u> and <u>MBOF</u>.

Permissive abstention and equitable remand may be raised <u>sua sponte</u> by a court notwithstanding the absence of a motion to remand by any party.  See <u>In re Gober</u>, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996) (permissive abstention); <u>Smith v. Wal-Mart Stores, Inc.</u>, 305 F. Supp. 2d 652, 658 n.9 (S.D. Miss. 2003) (permissive abstention and equitable remand).  Although the new management did not formally move for abstention or remand in <u>Zajic</u>, it did request at argument that the Court remand that case as well if the Court deemed it appropriate.  (Tr. at 23-24.)

<u>Zajic</u> is a more recently filed case, and, as the new management acknowledges, far less work has gone into it in state court than is the case in <u>Visan</u> or <u>MBOF</u>.  Nevertheless, permissive abstention and equitable remand appear to be appropriate in <u>Zajic</u>.  Most of the factors discussed above seem to apply as readily to <u>Zajic</u> as to <u>Visan</u> and <u>MBOF</u>.  Moreover, the parties in <u>Zajic</u>, the basic factual background, and at least some legal issues overlap significantly with those in <u>Visan</u>, and judicial economy would likely be substantially served by having

32

those cases heard by the same court.  See NTL, 295 B.R. at 717 (looking to "the presence of a related proceeding commenced in state court or other non-bankruptcy court").

However, the Court will defer a decision on whether to remand Zajic to state court to allow the old management an opportunity to address the issue.

Accordingly, Visan and MBOF are remanded to state court. If the old management opposes the application of permissive abstention and equitable remand in Zajic, it should submit a letter brief within 14 days of the date of this Opinion and Order.[9]  If it does not do so, Zajic will be promptly remanded. If any reply is required from the new management, the Court will so order.

## IV.  Motions to Intervene

Because the case must be remanded under § 1334(c)(2), the motions to intervene are denied as moot without prejudice to renewal in state court.  See, e.g., In re Extended Stay Inc., 418 B.R. 49, 60-61 (Bankr. S.D.N.Y. 2009), aff'd in part, 435 B.R. 139 (S.D.N.Y. 2010) ("Inasmuch as the Court has granted the motion to remand . . . , the Debtors' motions to intervene . . . need not be considered.").  The Court has carefully read each of

---

[9] The parties should bear in mind that there is no need to repeat arguments that were made in Visan and MBOF except to the extent that they have unique application in Zajic.  This is not an opportunity to reargue the rulings in this Opinion and Order or to seek relief that was not previously sought.

the motions to intervene and there is nothing in those motions that indicates that these cases should not be remanded to state court.

## V.  Motions for Costs and Expenses Under 28 U.S.C. § 1447(c)

Finally, the new management moves for costs and expenses in Visan and MBOF pursuant to 28 U.S.C. § 1447(c).  Although the old management does not oppose these requests, its opposition can fairly be inferred from its arguments against remand.

A court remanding a case removed from state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  A case need not be removed improvidently or in bad faith for costs to be appropriate.  See Morgan Guar. Trust Co. of N.Y. v. Republic of Palau, 971 F.2d 917, 923 (2d Cir. 1992).  Instead, it is appropriate for a court to consider the "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties."  Id. at 924 (internal quotation marks omitted).  Costs and expenses are available to "deter[] improper removal" because "the simplicity of [the removal] procedure . . . exposes a [non-removing party] to the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly."  Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc., 183 F.3d 105, 109 (2d Cir. 1999).

34

Here, it is appropriate to require the removing parties to
pay the costs and expenses of the opposing parties.  As an
initial matter, the grounds for removal were extraordinarily
weak: in addition to citing wholly meritless and procedurally
improper trademark and diversity grounds, the old management
relied upon tenuous connections to bankruptcy proceedings
despite the fact that the bankruptcy judge specifically allowed
these proceedings to continue in state court.  They did so
despite years of litigation in state court.  In Visan, they
removed the case literally the day before a hearing before
Justice Fried when it was clear that a decision was imminent.
This timing, combined with the many actions taken by the old
management in state court that delayed the proceedings in both
Visan and MBOF, raises a strong inference of delay and forum-
shopping.  In any event, it is more than enough to recognize
that the parties opposing removal were put to needless expense
on the thinnest of bases.

Accordingly, awards of costs and expenses are appropriate
in Visan and MBOF.  Even after remand, the Court retains
jurisdiction to award attorney's fees and costs.  See Mints v.
Educ. Testing Serv., 99 F.3d 1253, 1257-58 (3d Cir. 1996); Moore
v. Permanente Med. Grp., Inc., 981 F.2d 443, 445 (9th Cir.
1992); see also Fed. R. Civ. P. 54(d); cf. Cooter & Gell v.
Hartmarx Corp., 496 U.S. 384, 395-96 (1990) ("[D]istrict courts

35

may award costs after an action is dismissed for want of jurisdiction. . . . [E]ven years after the entry of a judgment on the merits a federal court could consider an award of counsel fees." (internal quotation marks omitted)).

Those parties who sought abstention or remand should submit an appropriate application for such attorney's fees and costs within 14 days of the date of this Opinion and Order, together with one or more supporting affidavits and an explanation as to whom the award should be assessed against.[10]

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the arguments are either moot or without merit.  For the foregoing reasons, the motions to remand in Visan and MBOF are **granted** and the cases are **remanded** to state court.  The Clerk is directed to remand the cases forthwith to the New York State Supreme Court, New York County.  Zajic will be **remanded** unless a party submits a letter brief opposing that remand within 14 days of the date of this Opinion and Order.  The motions for costs and expenses

---

[10] The new management also requests that the Court reserve jurisdiction in both cases to allow motions for sanctions pursuant to Federal Rule of Civil Procedure 11.  Because the new management has not filed separate motions describing the specific conduct alleged to violate Rule 11, and because there is no indication that the new management gave the removing parties 21 days' notice to withdraw the offending pleadings, sanctions are not available under that rule.  See Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002).

in Visan and MBOF are **granted**.  Any prevailing party on these
motions should submit an appropriate application within 14 days
of the date of this Opinion and Order.

The Clerk is directed to close all pending motions in Nos.
11 Civ. 2306 and 11 Civ. 2769, and to close those cases.

**SO ORDERED.**

Dated:     New York, New York
           July 20, 2011

                                        _____
                                             John G. Koeltl
                                        United States District Judge

37